**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE**

**MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **CRIMINAL ACTION NO.** |
| **v.** | ) | **2:18cr109-MHT** |
| | ) | **(WO)** |
| **ANTONIO OSCAR TATUM** | ) | |

**OPINION AND ORDER**

This case is before the court on the question whether defendant Antonio Oscar Tatum is mentally competent to stand trial. The government's and Tatum's experts disagreed about whether Tatum is competent. Tatum's expert reported in May 2018 that he was incompetent, but offered no opinion about his competency as of December 21, 2018, when the court held the competency hearing. By contrast, a forensic psychologist for the Bureau of Prisons (BOP) opined both in a September 2018 report and at the December 21 hearing that Tatum is competent to proceed. For the reasons outlined below, the court finds by a preponderance of the evidence that Tatum is competent to stand trial.

I.   BACKGROUND

In March 2018, Tatum was indicted on one count of theft of a firearm from a federal firearms licensee, in violation of 18 U.S.C. § 922(u), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  The government alleges that he stole four rifles from a gun shop in Montgomery, Alabama.

On May 8, 2018, Tatum filed a motion for a competency hearing, which attached a forensic psychological evaluation by Dr. David C. Ghostley addressing Tatum's competency to stand trial.  *See* Ghostley Report (doc. no. 36-2).  As detailed below, Dr. Ghostley found that Tatum was not currently competent to stand trial and would require an estimated three months to "stabiliz[e]."  *Id.* at 5.  The government subsequently filed a motion for a mental-health evaluation and treatment, in which it requested that the court enter an order finding Tatum

incompetent, and remove him to BOP custody for restoration, and to determine whether there was a substantial probability that he would attain capacity. *See* Government Motion (doc. no. 45) at 1-2. The magistrate judge granted the government's motion to the extent that he committed Tatum to BOP custody "for a psychiatric and/or psychological examination to determine his competency" as well as whether he was insane at the time of the alleged offense. Commitment Order (doc. no. 48). On September 7, 2018, the BOP filed a forensic evaluation by Dr. Jessica Micono concluding that Tatum was currently competent to stand trial. *See* BOP Report (doc. no. 55) at 19.

On December 21, 2018, this court held a competency hearing, where it heard testimony from both Dr. Ghostley and Dr. Micono.

## II. DISCUSSION

A defendant is not fit to stand trial if he is

"presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). Courts apply a two-part test to determine competency. *See Bundy v. Dugger*, 850 F.2d 1402, 1408 (11th Cir. 1988). First the district court determines whether "the defendant suffer[s] from a clinically recognized disorder[]." *Id.* If he does, the court then determines whether "that disorder render[s] the defendant incompetent under" the test for incompetency established by the Supreme Court in *Dusky v. United States*, 362 U.S. 402, 402 (1960). *Id.* The *Dusky* test asks whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." 362 U.S. at 402.

4

The law is unsettled on which party bears the burden of proof as to competency. *See United States* v. *Merriweather*, 921 F. Supp. 2d 1265, 1290 (N.D. Ala. 2013) (Proctor, J.) (stating that § 4241 "is silent on this point, noting only that the court must find by a preponderance of the evidence that a defendant is incompetent to stand trial"). Nonetheless, this "court need not resolve" this open question, "for the outcome here would be the same regardless": Tatum is competent to proceed. *United States v. Brooks*, 2010 WL 5169074, at *2 (M.D. Ala. Dec. 14, 2010) (Thompson, J.).

A. Clinically Recognized Disorder

The experts provided conflicting diagnoses as to whether Tatum suffers from a "clinically recognized disorder," the first prong of the two-part competency assessment. *Bundy*, 850 F.2d at 1408. Dr. Ghostley, Tatum's expert, reported that Tatum "presented with significant signs and symptoms of mental illness" and

noted a "diagnostic impression" of schizophrenia, paranoid type, and unspecified mood disorder. Ghostley Report (doc. no. 36-2) at 4. Dr. Ghostley also reported several prior mental-health diagnoses. Specifically, when admitted to Crossbridge Behavioral Health in 2014, Tatum was diagnosed with paranoid schizophrenia and anxiety; in February 2018, he was again admitted to Crossbridge and diagnosed with antisocial personality disorder, bipolar disorder, longstanding depression, and impulse control personality disorder with paranoid delusions; and, in March 2018, a clinician at Montgomery Mental Health diagnosed him with schizophrenia, paranoid type. *See id.* at 3.

On the other hand, Dr. Micono, the BOP evaluator, gave Tatum a DSM-5 diagnosis of "malingering," meaning that he was intentionally producing false or grossly exaggerated psychological symptoms. BOP Report (doc. no. 55) at 14. She further found that it was not

6

appropriate to diagnose Tatum with a "psychotic disorder, such as Schizophrenia." *Id.* at 17. While Dr. Micono found some evidence for consideration of a diagnosis of antisocial personality disorder, it was not enough evidence to confirm or exclude the diagnosis. *Id.* at 15-16. Even if Tatum were diagnosed with antisocial personality disorder, Dr. Micono reported, the diagnosis would not impact his competency to proceed. *Id.* at 16.

Ultimately, the court need not resolve whether Tatum suffers from a "clinically recognized disorder," because the court finds that he is competent under the second prong of the competency test, *see Bundy*, 850 F.2d at 1408, that is, the standard for competency set forth in *Dusky*, 362 U.S. at 402.

### B.  The *Dusky* Standard

The second prong of the competency test is whether the defendant "has sufficient present ability to

consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402. Dr. Ghostley's basis for finding Tatum incompetent was that he was unable to assist his lawyer "with a reasonable degree of rational understanding due to his delusional system complicated by noncompliance with his psychiatric medication." Ghostley Report (doc. no. 36-2) at 5.[*] The key reported delusional belief was that the "State" had put a chip in Tatum's brain and was controlling his thoughts and actions. *See id.* at 2. Dr. Micono, by contrast, concluded that Tatum is malingering and is not actually delusional.

---

[*] The report also describes the impact of Tatum's delusional beliefs as follows: "his delusional beliefs are presently interfering with his choice of a viable legal strategy as well as his ability to testify relevantly. Additionally, his delusional thinking is likely to cause significant problems in his relationship with his attorney." Ghostley Report (doc. no 36-2) at 5.

Accordingly, the parties' dispute concerning the second prong of the competency test boils down to whether Tatum has delusional beliefs that preclude him from consulting with his lawyer with a reasonable degree of rational understanding. After considering the expert reports and testimony, the court concludes that he does not have such delusional beliefs.

Dr. Micono provided several compelling reasons to conclude that Tatum was malingering and does not in fact hold delusional beliefs concerning a computer chip in his brain. To start, Tatum's "statements were not consistent with delusional ideation." BOP Report (doc. no. 55) at 19. As Dr. Micono explained, people with authentic delusional beliefs have no difficulty describing their delusions to others and their delusional beliefs tend to be "extremely rigid," meaning that they will "dismiss any alterative explanations, possibilities, or contradictory information." *Id.* Yet, according to Dr. Micono, Tatum

9

was unable to provide details regarding his beliefs, rarely brought up his belief about the computer chip, and was open to alternative explanations for his experience. *See id.* Dr. Micono testified that Tatum's description of his delusional beliefs changed over the course of his evaluation at the BOP, demonstrating that they lacked rigidity. She also highlighted that Tatum's claim that he has had the computer chip belief since he was a child was highly unlikely, given in part that the onset of psychotic symptoms such as delusions during childhood is extremely rare. *See id.* at 15.

Additionally, while some level of impairment in functioning would be expected from a person holding delusional beliefs, Tatum displayed no difficulties with daily functioning and "no significant distress" related to his reported beliefs. *Id*. at 14-15.

Finally, at the BOP, Tatum was administered several formal assessments to evaluate his psychological functioning and the credibility of his reports,

including the Reliable Digit Span, the Structured Inventory of Malingered Symptomatology (SIMS), the Minnesota Multiphasic Personality Inventory, Second Edition, Restructured Format (MMPI-2-RF), and the Miller Forensic Assessment of Symptoms Test (M-FAST). The results for all the assessments "indicated exaggeration of psychological symptoms, a noncooperative approach, or poor effort." *Id.* at 15.

As Dr. Micono testified, the discrepancies between her report and Dr. Ghostley's can be explained by the fact that Dr. Ghostley did not benefit from a longer period of evaluation. Whereas Dr. Ghostley evaluated Tatum on one occasion, on April 24, 2018, Dr. Micono testified that she met with Tatum on six occasions, totaling more than four hours of face-to-face time, during the nearly 50 days he was at the BOP facility. According to Dr. Micono, mental-health symptoms are more difficult to feign over an extended period; also, Tatum may have even been experiencing the residual

11

effects of synthetic marijuana use when Dr. Ghostley evaluated him. The court is persuaded that, in the circumstances here, Dr. Micono's longitudinal evaluation allowed her to produce a better-informed and more accurate opinion about Tatum's competency. *See United States v. Perkins*, 2018 WL 5300388, at *1 (M.D. Ala. Oct. 25, 2018) (Thompson, J.) (finding that an inpatient, longitudinal study will "likely allow the examiner to reach a firmer conclusion" regarding defendant Perkins's competency).

Crucially, Dr. Ghostley testified that he had no criticisms of Dr. Micono's report. Furthermore, unlike Dr. Micono, Dr. Ghostley said he could not testify whether, as of the day of the competency hearing--nearly eight months after he evaluated Tatum-- he was competent to stand trial. That Tatum's expert neither criticized Dr. Micono's report nor offered an opinion about Tatum's competency as of the day of the hearing provides further support to find him competent.

In sum, based on the expert reports and testimony, the court concludes that Tatum "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and ... has a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402.

***

Accordingly, it is ORDERED and DECLARED that defendant Antonio Oscar Tatum is competent to stand trial, that is, that he is not "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d).

DONE, this the 4th day of January, 2019.

                          /s/ Myron H. Thompson
                          **UNITED STATES DISTRICT JUDGE**