IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:18cr109-MHT |
| | ) | (WO) |
| ANTONIO OSCAR TATUM | ) | |

OPINION AND ORDER

Defendant Antonio Oscar Tatum was convicted and sentenced to prison for theft of a firearm and recently began his term of supervised release. This case is now before the court to determine whether to add a new condition of supervised release requiring Tatum not to contact certain individuals. The court held an in-person, on-the-record evidentiary hearing on this issue on July 24, 2025. For the following reasons, and based on the testimony and evidence presented at the hearing, the court will add the no-contact condition.

I.  BACKGROUND

On July 25, 2019, this court sentenced Tatum to 100

months in prison, followed by a three-year term of supervised release, for the offense of theft of a firearm from a federal firearms dealer in violation of 18 U.S.C. § 922(u). The court imposed three conditions of supervised release: substance-abuse treatment, mental-health treatment, and submission to searches in accordance with the court's policy. According to the presentence investigation report, Tatum's offense involved breaking into a gun store through a wall and stealing four AR-style rifles. *See* Presentence Investigation Report (Doc. 157) at 3-4. At the time of his offense, he had a lengthy history of criminal activity and at least seven prior felony convictions, and had repeatedly been revoked on probation after being arrested for new offenses. *Id.* at 6-12.

Towards the end of his incarceration sentence, Tatum was transferred to a halfway house run by the federal Bureau of Prisons (BOP). Shortly before he was released from BOP custody, his supervising probation officer filed

2

a status report to notify the court that, based on Tatum's repeated misconduct at the halfway house and threats he made to individuals in the community, she recommended that the court hold an in-person hearing immediately upon his release from BOP custody. *See* Status Update (Doc. 216).

The court scheduled a hearing on the day Tatum began supervised release, July 17, 2025. At the hearing, the probation department and the government expressed concerns about a particular individual's safety and asked the court to impose a no-contact order between Tatum and the individual, her family, and her coworkers, which the court did on an emergency basis. *See* Order (Doc. 220). The court then set an evidentiary hearing a week later to hear witness testimony.

## II. APPLICABLE LAW

A district court may, after considering certain

3

factors set forth in 18 U.S.C. § 3553(a), "modify, reduce, or enlarge the conditions of supervised release at any time prior to the expiration or termination of the term pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision." 18 U.S.C. § 3583(e)(2).

Federal Rule of Criminal Procedure Rule 32.1(c) governs modifications of the conditions of supervised release. The rule generally requires a hearing at which the defendant "has the right to counsel and an opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(c)(1).[1]

In determining the conditions of supervised release, "[t]he court must consider the history and

---

1. A modification hearing is not required when certain exceptions apply. *See* Fed. R. Crim. P. 32.1(c)(2).

4

characteristics of the defendant, provide both adequate punishment and rehabilitation of the defendant, and protect society at large." *United States v. Moran*, 573 F.3d 1132, 1139 (11th Cir. 2009) (citing 18 U.S.C. § 3583(c); 18 U.S.C. § 3553(a)). The court may impose any special condition of supervised release so long as the condition is "reasonably related to" the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to afford adequate deterrence, protect the public from the defendant, and provide rehabilitative care to the defendant, and "involves no greater deprivation of liberty than is reasonably necessary for the purposes" of deterrence, public protection, and rehabilitation of the defendant. 18 U.S.C. § 3583(d). Conditions must also be "consistent with any pertinent policy statements issued by the Sentencing Commission." *Id*.

A special condition does not need to "be supported by each factor enumerated in [18 U.S.C.] § 3553(a).

5

Rather, each is an independent consideration to be weighed." *Moran*, 573 F.3d at 1139 (quoting *United States v. Zinn*, 321 F.3d 1084, 1089 (11th Cir. 2003)). While courts must not impose conditions that "unduly restrict a defendant's liberty, a condition is not invalid simply because it affects a probationer's ability to exercise constitutionally protected rights." *Id*.

## III. FACTS

Based on the sworn testimony of the witnesses at the evidentiary hearing on July 24, 2025, the court finds the following facts.

Near the end of his sentence, Tatum was placed at a federal halfway house. While living there, he met a woman, CD[2], on a local bus, and the two became romantically involved. Although she is an adult and lives alone, CD has the mental capacity of a person in

---

2. The court refers to "CD" by her initials to protect her privacy.

her early teens: her father pays her bills, buys her groceries, and checks on her several times a week. CD receives social-security disability benefits and works through an organization that employs people with disabilities and provides janitorial services at the Federal Courthouse in Montgomery, Alabama.

After she began seeing Tatum, CD's family and friends became concerned about her safety and well-being. She told them about instances in which Tatum physically assaulted her and emotionally abused her. For instance, on one occasion, while he was living at the federal halfway house, Tatum came to see her at her apartment. He was in the habit of calling her constantly, and he was angry when he arrived because she had not promptly answered his phone call the night before. Because he was angry, she went to lay down, but he stormed in after her, pinned her to the bed, and hit her repeatedly on the rear end until she "saw white." Hearing Tr. at 16, 49. While he was hitting her, she told him he was hurting her and

7

asked him to stop, but he continued. She was sore and moved slowly at work for several days after. Tatum told CD that, if she was going to tell anyone about this incident, she needed to tell them it was just a game.

Tatum also threatened to kill CD. He told her he would take her out to the woods so no one could hear her scream, tie her to a tree, and beat her with a cord or stab her. CD asked him to show her the cord he would use because she did not think he could access a cord while at the halfway house. He produced an electrical cord.

Additionally, Tatum threatened CD's father, her stepmother, and one of CD's coworkers. Tatum threatened to stab her father and burn down his and her stepmother's house. Tatum does not like CD's father because he takes her to certain medical appointments[3] and controls her social-security checks. At one point, Tatum orchestrated

---

3. More detail regarding these medical appointments is provided in an addendum under seal.

CD's missing a medical appointment. He also has gotten CD to give him money.

Finally, Tatum indirectly threatened Stanley Jackson, a coworker of CD's. One day at work CD asked Jackson if she could photograph him. He declined and asked why she wanted his picture. Initially she would not say, but the next day she asked again and admitted that her boyfriend wanted to see what he looked like because he wanted to fight Jackson.

## IV. DISCUSSION

### A.

As noted earlier, after considering the relevant factors in 18 U.S.C. § 3553(a),[4] and after holding a

---

4. Courts are not to consider one of the § 3553(a) factors in deciding whether to modify conditions of supervised release: § 3553(a)(2)(A), relating to the need for a sentence to "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *See* 18 U.S.C. § 3583(c) (requiring courts to consider § "3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6),

9

hearing meeting the requirements of Federal Rule of Criminal Procedure 32.1(c)(1), the court may add a special condition of supervised release if the requirements for the initial imposition of a special condition of supervision are met. *See* 18 U.S.C. § 3583(e)(2). The condition should be reasonably related to the defendant's offense, history, and characteristics and to the need to deter crime, protect the public, and rehabilitate the defendant, and should limit the defendant's liberty only to the extent reasonably necessary to meet these needs. *See* 18 U.S.C. § 3583(d). As all requirements have been met, and because the condition advances the needs for deterrence, protection of the public, and rehabilitation, the court will impose

---

and (a)(7)" in determining the conditions of supervised release); *cf. Esteras v. United States*, 145 S.Ct. 2031 (2025) (when revoking supervised release, district courts cannot consider § 3553(a)(2)(A)'s retributive sentencing factor that looks at the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense).

a no-contact order as a condition of supervised release.

The hearing held on July 24, 2025, met the requirements of Federal Rule of Criminal Procedure 32.1, as Tatum was represented by counsel and had the opportunity to make a statement, as well as present any information in mitigation, though he chose not to do so. *See* Fed. R. Crim. P. 32.1(c). Moreover, Tatum had the opportunity to cross-examine each witness and was given the opportunity to present testimony but declined to do so before the end of the hearing.

The evidence at the hearing showed that Tatum poses a danger to CD, her family members, and at least one of her coworkers. Tatum physically and emotionally abused CD and threatened her, her family, and a coworker. CD's disability and attendant manipulability heightens the need to protect her. Moreover, Tatum's history of lawbreaking over approximately 15 years and his repeated probation violations by committing new crimes add to the court's concern that he poses a danger to CD and the

11

others and that he needs additional deterrence to prevent future lawbreaking.  Tatum's history reflects a pattern of risky and dangerous behavior, ignoring the law, and violating the rights of others.  An order preventing him from contacting CD, her family, and her coworkers is reasonably necessary to protect the public and deter future criminal activity.  Moreover, for purposes of rehabilitation, Tatum needs to understand that he cannot engage in illegal, abusive, or threatening conduct towards others.  The no-contact condition helps him learn that important lesson.

B.

Because much of the evidence presented at the hearing constituted hearsay, the court has assessed the permissibility of reliance on such evidence in a modification proceeding.  *See* Fed. R. Evid. 801(c) (defining hearsay).  The court concludes that it was permitted to consider the hearsay testimony presented at

12

the hearing and that, in any case, the evidence bore significant indicia of reliability.

The Federal Rules of Evidence, other than those pertaining to privileges, do not apply in "miscellaneous proceedings." Fed. R. Evid. 1101(d)(3). Rule 1101 provides a non-exhaustive list of examples of such proceedings that includes sentencings and revocation hearings. *See id*. Although supervised-release modification hearings are not mentioned in Rule 1101(d), they are comparable to sentencings in that courts decide at sentencing which special conditions of supervised release to impose.[5] Accordingly, the court concludes that modification hearings constitute a "miscellaneous

---

5. The close relationship between modification of supervised release and sentencing is reflected in 18 U.S.C. § 3583(c), the statute authorizing modifications of supervised release conditions. It requires courts to modify the conditions of supervised release "pursuant to ... the provisions applicable to the initial setting of the terms and conditions of post-release supervision." 18 U.S.C. § 3583(e)(2).

13

hearing" at which the Federal Rules of Evidence's limitations on the admission of hearsay do not apply.

Moreover, the hearsay presented at the hearing bore "indicia of reliability." *United States v. Giltner*, 889 F.2d 1004, 1007 (11th Cir. 1989) ("While hearsay evidence may be considered in sentencing, due process requires both that the defendant be given an opportunity to refute it and that it bear minimal indicia of reliability.").[6] CD's father and two of her coworkers each testified to conversations they had with CD regarding at least one assault and threats made by Tatum. Tatum's supervising probation officer also testified to the information about Tatum's behavior that CD shared with her during a three-hour meeting. The witnesses, who--aside from the

---

6. Because the court is considering imposing a new condition of supervised release, as it would do at sentencing, the court concludes that the due-process interests at issue in a modification proceeding are akin to those that apply at sentencing.

14

probation officer--were not present when the other witnesses testified, corroborated each other's testimony.  All four witnesses testified that CD told them that Tatum had threatened CD, her family, and her coworkers.  Each witness also confirmed that CD told them Tatum assaulted her.  The consistency of CD's reports to different individuals supports the reliability of the testimony.

C.

The court also notes that, while neither the United States Supreme Court nor the United States Court of Appeals Eleventh Circuit has determined whether a district court may impose a no-contact order as a condition of supervised release, several other federal courts of appeal have upheld the condition for the purposes of deterring the defendant from committing future crimes and protecting the public.

15

For example, in *United States v. Santos Diaz*, 66 F.4th 435 (2023), the United States Court of Appeals for the Third Circuit affirmed the district court's decision to impose a special condition of supervision prohibiting the defendant from contacting his fiancé during his two-year term of supervised release. Evidence indicated the defendant had physically abused his fiancé and convinced her to lie about it, and the defendant had a demonstrated history of noncompliance with federal and state court orders. The appellate court found that the no-contact order was an appropriate condition of supervision because it advanced the need for deterrence and protection of the public, including the defendant's fiancé.[7] Similarly, here a no-contact order advances

---

7. In *Santos Diaz*, the court rejected the defendant's argument that the no-contact condition violated his First Amendment rights, noting that even conditions restricting constitutional rights "will be upheld if (1) they are directly related to deterring defendant and protecting the public and (2) are narrowly tailored." *Id.* at 448. The court found that the condition was sufficiently limited in scope, that there was no alternative measure

16

the same purposes.  *See also United States v. Santos Diaz*, 66 F.4th 435 (3d Cir.) (finding a no-contact order imposed by the court was necessary for deterrence purposes and to protect the victim), *cert. denied*, 144 S. Ct. 203 (2023); *United States v. Wilkins*, 909 F.3d 915 (8th Cir. 2018) (upholding a special condition forbidding the defendant from contacting his wife because he assaulted her); *United States v. Bortels*, 962 F.2d 558 (6th Cir. 1992) (affirming district court's special condition preventing appellant from communicating with her fiancé because it protected the public).

D.

In sum, considering Tatum's history and characteristics--namely, his past noncompliance with the

---

available to achieve the goal of preventing communication between the defendant and his fiancé, and noted that the probation officer or the defendant could request that the court modify the condition at any point during the supervisory period.

17

law and court orders, including his criminal history of violating probation by repeatedly committing other crimes while on probation, and his assault on CD and threats to CD, her father and stepmother, and her coworker--the court finds that a special condition of supervised release prohibiting Tatum from having any contact with CD, her immediate family, and her coworkers who work at the Montgomery Federal Courthouse is necessary to protect the public from further crimes by Tatum and to afford adequate deterrence to criminal conduct by Tatum, as well as to advance his rehabilitation. The special condition is also the least restrictive means to achieve these ends.

The court will, however, revisit the no-contact order in about a year to make sure it is still needed.

***

Accordingly, it is ORDERED that:

(1) Defendant Antonio Oscar Tatum's special

conditions of supervised release are modified to add a no-contact condition that will be set forth in a separate, sealed order.

(2) A status conference is set for August 20, 2026, at 9:00 a.m., by videoconference, to discuss defendant Tatum's performance on supervised release and whether the no-contact condition is still necessary.

(3) The probation office and defense counsel shall file a status report on defendant Tatum's compliance with supervision conditions five business days before the conference.

DONE, this the 25th day of August, 2025.

                              /s/ Myron H. Thompson
                             UNITED STATES DISTRICT JUDGE